IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JESSE WARD, ) | |
| ) | |
| Plaintiff, ) | Civil No. 3:18-cv-01734-NJR-MAB |
| v. ) | |
| ) | **MEMORANDUM OF LAW IN** |
| CONSEQUENCE HOLDINGS, INC., ) | **SUPPORT OF MOTION TO SET** |
| ) | **ASIDE ENTRY OF DEFAULT** |
| Defendant. ) | **PURSUANT TO FED. R. CIV. P.** |
| ) | **55(c)** |

Pursuant to Rule 55(c) of the Federal Rules of Civil Procedure, Defendant Consequence Holdings, LLC ("Defendant")[1] moves the Court to set aside the *ex parte* default entered against it. Doc. 13. "The court may set aside an entry of default for good cause[.]" Fed. R. Civ. P. 55(c). "A party seeking to vacate an entry of default prior to the entry of final judgment must show: '(1) good cause for the default; (2) quick action to correct it; and (3) a meritorious defense to the complaint.'" *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 630 (7th Cir. 2009) (quoting *Sun v. Bd. of Trs. of the Univ. of Ill.*, 473 F.3d 799, 810 (7th Cir. 2007)). Defendant will show that each element readily applies.

There is good cause to set aside a default that Plaintiff Jesse Ward ("Ward"), through his counsel Richard Liebowitz ("Liebowitz"), secured by lulling Defendant with false assurances. Liebowitz agreed to extend Defendant's time to respond to the complaint during settlement negotiations, and never told Defendant that he would revoke that agreement. Instead, he simply stopped communicating with Defendant at all and moved for entry of default, never giving Defendant the notice required by Local Rule 55.1(a) despite a direct order to comply with the rule. Defendant was still awaiting Liebowitz's response to its last correspondence when it learned in late July, upon belated

---

[1] Defendant is erroneously identified as "Consequence Holdings, Inc." in the complaint.

1

service of the April motion for default judgment, that a default was entered in January. Within two weeks of that service, Defendant now promptly moves to correct the default.

Meritorious defenses to Ward's complaint warrant litigation on the merits. Personal jurisdiction and venue are not proper; this District has no nexus to either claim that Ward, a New Yorker, raises against the Chicago-based Defendant. One of the claims never happened: Defendant did not remove, alter, or falsify any copyright management information in violation of 17 U.S.C. § 1202(b), nor did it have the "double scienter" that the DMCA requires. As for the copyright infringement claim, Ward fails to establish any basis for the speculative damages he seeks. These contested claims must be determined based on the parties' evidence, not on a surreptitiously obtained entry of default.

## Factual and Procedural Background

Ward took a picture of musician Bobby Shmurda in court, and licensed it to the New York Daily News, which published the photograph on February 24, 2015. Doc. 1 ¶¶ 7-8. Defendant, publisher of the online music magazine *Consequence of Sound*, published an article about Bobby Shmurda using the same photograph on September 9, 2016 without a license from Ward. *Id.* ¶¶ 11-12. Ward obtained a copyright registration for a group of photographs, including the Bobby Shmurda photograph, effective December 19, 2017. Doc. 1-3 p. 3. Ward, through Liebowitz, initiated this action on September 17, 2018, alleging copyright infringement and violation of 17 U.S.C. § 1202(b). Doc. 1.

Process was served on Defendant's registered agent National Registered Agents, Inc. on September 25, 2018. Declaration of Alex Young ("Young Decl.") ¶ 3. It forwarded the summons and complaint to Defendant via UPS, but not until October 10, 2018. *Id.* & Ex. 1 (noting "Delay due to incorrect address on file."). Defendant received

the summons and complaint on Friday, October 12, 2018. *Id.* ¶ 4.

On October 18, 2018, Defendant's founder and publisher Alex Young ("Young") explained in an email to Liebowitz, "I only received [the summons] in the mail late last week," and offered to make full amends for the unlicensed use:

> I would propose an amicable solution in which we compensate Mr. Ward for his normal rate for a published photograph. … In the interim, I would also ask that you provide an extension on the 21-day summons deadline. As I mentioned previously, we only received your letter last week, and not September 25th – as noted on the initial date of delivery.

*Id.* ¶ 5 & Ex. 2 p. 1. Liebowitz responded that day, offering to settle for $25,000. *Id.* Young replied that afternoon, again requesting an extension during settlement negotiations, inquiring as to Ward's standard rates and the basis for the $25,000 proposal, and noting, "To date, the article on which Mr. Ward's photograph was featured generated 3,861 page views (per Google Analytics). At a $10.00 CPM, we generated a little less than $40 in revenue from the article." *Id.* ¶ 5 & Ex. 2 p. 2. Liebowitz responded that evening, "Thank you. We will agree to the extension, how long do you need?" *Id.*

The next day, Friday, October 19, 2018, Young and Liebowitz proposed to continue discussions the following week. *Id.* ¶ 5 & Ex. 2 pp. 2-3.

On October 25, 2018, Young sent a letter to Liebowitz outlining Defendants' position: "It is our contention that there is no basis for this lawsuit. The lawsuit was filed in the Southern District of Illinois (St Louis, MO), which does not have jurisdiction over Consequence Holdings (Cook County, IL)." Young Decl. ¶ 6 & Ex. 3 p. 1. Young specifically disputed "the claim that we intentionally and maliciously posted the photograph and removed its attribution." *Id.* He added:

Consequence Holdings respectfully requests the following:

- Confirm you have a basis to sue us in the Southern District of Illinois (St Louis, MO), the venue the complaint was filed in, which, from our research, does not have jurisdiction over Consequence Holdings (Cook County, IL)
- Provide an explanation for how you arrived with the proposed settlement amount of $25,000
- Include the photographer's normal licensing fee

Please understand this is an attempt to resolve this complaint that achieves a fair and equitable representation for both parties.

*Id.* ¶ 6 & Ex. 3 pp. 1-2. The letter was sent via certified mail and delivered to Liebowitz's office on October 29, 2018. *Id.* ¶ 7 & Ex. 4. It was received by Stefanie Iatrou, a legal assistant at Liebowitz's firm. *Id.* Liebowitz did not reply to the letter or engage in further communications with Defendant. *Id.* ¶ 8.

On December 21, 2018, the Court issued the first of four notices of impending dismissal for want of prosecution; this first one ordered that the case would be dismissed absent notice of proper service of process. Doc. 7. Liebowitz filed the executed summons that day. Doc. 8. On December 26, 2018, the Court issued a second notice of impending dismissal, this time ordering that Defendant would be dismissed unless Ward moved for a clerk's entry of default. Doc. 9. The Court further directed: "Plaintiff should be sure to follow the requirements of Local Rule 55.1 when filing his motion for entry of default." *Id.* That rule mandates, among other things:

> The serving party shall give notice of the entry of default to the defaulting party by regular mail sent to the last known address of the defaulted party and shall certify to the Court that notice has been sent.

Local Rule 55.1(a). Though Ward never filed a motion for entry of default, Liebowitz filed a declaration in support of such a motion on January 24, 2019. Doc. 11. Liebowitz never informed the Court that he had agreed to grant Defendant an extension of unspecified duration to respond to the complaint, or that he had not responded to

4

Defendant's October 25, 2018 letter seeking information pertinent to settlement. Young Decl. ¶ 9. Further, despite the Court's instruction to comply with Local Rule 55.1, Ward had neither mailed notice of the entry of default to Defendant nor certified that notice had been sent. *Id.* ¶ 10. Yet the Clerk entered the default on January 25, 2019. Doc. 13.

The Court's third notice of impending dismissal for want of prosecution, on April 1, 2019, gave Ward three weeks to move for default judgment pursuant to Fed. R. Civ. P. 55(b) or the case would be dismissed. Doc. 16. On April 22, 2019, Liebowitz filed Ward's motion for default judgment and supporting declaration and exhibits. Doc. 17 & 18. None of his filings acknowledged Ward's failures to comply with Local Rule 55.1 or Liebowitz's knowledge that this Court lacks personal jurisdiction over Defendant. *Id.*

On May 8, 2019, the Court found that Ward had not complied with Local Rule 55.1(b) and ordered him to affirm mailing his motion for default judgment to Defendant. Doc. 19. Noting his continuing noncompliance seven weeks later, on June 27, 2019, the Court entered a fourth notice of impending dismissal and ordered Ward to comply with the May 8 order by July 11 or the case would be dismissed. Doc. 20. Liebowitz filed a certificate of service on July 11, 2019, certifying that Ward's motion for default judgment had been mailed to Defendant on July 10. Doc. 21. Defendant first learned of the default when it received that motion on or about July 17, 2019. Young Decl. ¶ 11. Defendant retained counsel on August 1, 2019. *Id.* ¶ 12. This motion is promptly filed one day later.

**Argument**

**I.     Good cause exists for the default and for the Court to set it aside.**

The entry of default is improper and should be set aside. It was obtained without notice, in a violation of Local Rule 55.1(a) that has never been remedied, even after Ward

5

and his counsel at last complied with Local Rule 55.1(b) in July and served the motion for default judgment eighty days after filing it. In the Court's second notice of impending dismissal, entered as an order on the docket, the Court specifically instructed, "Plaintiff should be sure to follow the requirements of Local Rule 55.1 when filing his motion for entry of default." Doc. 9. That rule mandates "notice of the entry of default" to the defaulting party by mail, and certification that the notice was given. Local Rule 55.1(a). Its provisions necessarily precede any default judgment: "in order for the Plaintiff to have obtained a default judgment, he was required to … serve notice of the entry of default to the defaulting party by regular mail, and certified to the Court that the notice was sent." *Reeves v. Harrington*, No. 13-cv-01171-JPG-PMF, 2014 U.S. Dist. LEXIS 143339, *6 (S.D. Ill. Oct. 7, 2014). Ward did not comply with either provision.

Moreover, the default was inadvertent, and its entry was secured on false pretenses. At first, Defendant's ability to address the complaint was postponed by its registered agent, which received service on September 25, 2018 but sent it to the wrong address, and only sent it out for delivery again on October 10, 2018. Young Decl. ¶ 3 & Ex. 1 ("Delay due to incorrect address on file. Updated address obtained. Delivery re-attempted."). Defendant first received the complaint and summons on October 12, 2018. *Id.* ¶ 4. "[A] registered agent's inadvertent conduct can provide good cause for a party's failure to respond." *Storms Indus. v. TheLaundryList.com, Inc.*, No. 09 C 1835, 2009 U.S. Dist. LEXIS 82517, *5 (N.D. Ill. Sept. 8, 2009) (citing *Cracco*, 559 F.3d at 630-31). Just six days later, on October 18, 2018, without counsel, Young contacted Liebowitz directly and obtained his agreement to extend the time to respond: "We will agree to the extension, how long do you need?" Young Decl. ¶ 5 & Ex. 2 p. 2. Young did propose a

limit on the extension, noting his intent to consult internally and discuss further the following week. Young Decl. ¶ 5 & Ex. 2 p. 3. Liebowitz also proposed no limit. That following week, on October 25, 2018, Young sent a certified letter to Liebowitz outlining Defendant's position and raising questions pertinent to settlement discussions, including personal jurisdiction and the proper measure of damages. Young Decl. ¶¶ 6-7 & Ex. 3. Though the letter was received by Liebowitz's assistant, he never responded. Young Decl. ¶¶ 7-8 & Ex. 4.

Through his counsel, Ward misled Defendant, giving neither notice of the January entry of default nor reason to expect it. Liebowitz had granted Defendant an indefinite extension of time to respond to the complaint during settlement discussions, which to Defendant's knowledge were still pending. Young Decl. Ex. 2 p. 2. Defendant was still awaiting Liebowitz's reply to its letter when it learned in July that, during his radio silence, he had resumed motion practice without service. Liebowitz did not notify the Court that he had agreed to extend Defendant's time to defend, and did not inform Defendant that he was effectively rescinding that extension unilaterally. He and Ward "did not inquire, by mail or otherwise, about [Defendant's] intentions… They proceeded only with the *ex parte* accomplishment of default." *Bieganek v. Taylor*, 801 F.2d 879, 882 (7th Cir. 1986). And "[t]here is nothing in the record to show that [Defendant] deliberately and wilfully defied the court or disregarded the litigation." *Id.* (noting that willful disregard would weigh against a finding of good cause to vacate). Only Liebowitz and Ward have displayed such disregard for the case and the Court's rules and orders.

Thus, there is good cause for the default. It was the result of an apparent ruse, in the sort of bait-and-switch operation that should have no place in litigation practice.

7

### II.     Defendant is taking swift corrective action.

Now that Defendant is at last aware of the Liebowitz ruse that led to the entry of default, Defendant is promptly taking steps to undo it: moving to set it aside and opposing the motion for default judgment. Quick corrective action "depends, quite clearly, on the particular circumstances of the defaulted defendant." *Jones v. Phipps*, 39 F.3d 158, 165 (7th Cir. 1994). The Seventh Circuit has observed, in the context of a motion to vacate a default judgment: "If, for instance, the defendant (through no fault of his or her own) did not even become aware of the default judgment until one month (or six months) after its entry, maybe trying to vacate the judgment at that late date would be quick enough to satisfy the standard." *Id.* That is exactly what happened with the January entry of default in this case, which Defendant did not learn about until late July. Young Decl. ¶ 11 And as the Seventh Circuit has held, the "good cause" test for setting aside a default under Rule 55(c) is applied more liberally than for vacating a default judgment under Rule 60(b). *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 631 (7th Cir. 2009).

In *Cracco*, the Seventh Circuit found it was "not in serious contention" that filing a motion to vacate only eight days after entry of default was "in a timely fashion to have the default order set aside." *Id.* The Seventh Circuit has found that a defendant who moved to set aside a default more than four months after its entry acted timely. *Bieganek*, 801 F.2d at 882. In this District, "[t]he Court is not aware of any requirement that a Motion to Vacate is required to be filed within 30 days of the default order." *Reeves*, 2014 U.S. Dist. LEXIS 143339, *6 (default overturned three months after entry). After Ward and Liebowitz withheld notice of the entry of default for six months, Defendant's quick steps to rectify it within days of learning of the default, further justify relief.

### III.     Defendant has meritorious defenses to the complaint.

If the default is set aside, Defendant expects to litigate and prevail on its meritorious defenses. "A meritorious defense is not necessarily one which must, beyond a doubt, succeed in defeating a default judgment, but rather one which at least raises a serious question regarding the propriety of a default judgment and which is supported by a developed legal and factual basis." *Jones v. Phipps*, 39 F.3d 158, 165 (7th Cir. 1994). Defendant offers and substantiates strong defenses to the propriety of the action as a whole, due to lack of personal jurisdiction and improper venue; to the elements of the DMCA claim, which are not met by Defendants' alleged copying and pasting of the *Daily News* photograph, acts that entail no removal or alteration of the separate "gutter credit" that ran alongside the photograph; and to the speculative damages claimed.

### A.     Defendant is not subject to personal jurisdiction in this District.

First, this case is not properly brought in this District, pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(3). Defendant's principal office is in Chicago. Young Decl. ¶ 12. Defendant does not reside, transact business, or have a place of business in this District. *Id.* Neither does Ward, a New Yorker, whose usual place of business and residence are both in Brooklyn. Doc. 1 ¶ 5; Doc. 1-3 p. 9. His allegations concern the use of a photograph he took in Brooklyn Supreme Court, of Brooklyn rap artist Bobby Shmurda, after it ran in the *New York Daily News* in 2015. Doc. 1 ¶¶ 1 & 7-8; Doc. 1-2. He does not allege that any infringement took place or had any effect in this District, or that Defendant has any other contact with this District. That is because no such contact exists.

Further, in a copyright action, "the personal jurisdiction analysis is directly tied to the determination of whether venue is appropriate." *Millennium TGA, Inc. v. Doe*, No. 10

9

C 5603, 2011 U.S. Dist. LEXIS 110135, *8 (N.D. Ill. Sept. 26, 2011). Where venue is improper, as in this case, so is jurisdiction. *Id.* at *9.

Ward relies on the general venue provision in 28 U.S.C. § 1391. Doc. 1 ¶ 4. But a separate venue statute, 28 U.S.C. § 1400(a), exclusively governs all copyright claims. See *Lumber v. Mae Edna Wilder, Inc*., 261 U.S. 174 (1923). "Section 1391 governs 'venue generally,' that is, in cases where a more specific venue provision does not apply. Cf., e.g., § 1400 (identifying proper venue for copyright and patent suits)." *Atl. Marine Constr. Co. v. United States Dist. Ct.*, 571 U.S. 49, 55 n. 2 (2013). Accord *Philpot v. Gray TV, Inc*., No. 14-cv-01977-JMS-DML, 2015 U.S. Dist. LEXIS 41662, *2 (S.D. Ind. Feb. 20, 2015) ("Venue for a civil copyright action is governed by 28 U.S.C. § 1400(a)") (citing *Atl. Marine Constr. Co.*).

Thus, courts in the Seventh Circuit analyze venue by treating each district as if it were its own state. *Philpot*, at *2-3. A defendant must reside, or be found, in a district with which it has sufficient contacts to be rendered amenable to personal jurisdiction; incorporation in the state, but outside the district, is insufficient. *Id.* Under Section 1400, the focus is whether the defendant resides (or may be found) in a "particular judicial district," not somewhere else in the state. *Milwaukee Concrete Studios, Ltd. v. Fjeld Mfg. Co*., 8 F.3d 441, 445-46 (7th Cir. 1993).

Ward recognizes that Defendant resides in Cook County. Doc. 1-6 ¶ I. The Complaint identifies Defendant at a Chicago address some 300 miles from the courthouse designated for this action; a good five hours away, unless you hit traffic. Doc. 1 ¶ 6. As alleged, Defendant has a website, *id.*, which is visible in this District and every other, but that does not suffice. "The interactivity of a website is also a poor proxy for adequate in-

10

state contacts." *Advanced Tactical Ordinance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 803 (7th Cir. 2014). "Having an 'interactive website' (which hardly rules out anything in 2014) should not open a defendant up to personal jurisdiction in every spot on the planet where that interactive website is accessible. To hold otherwise would offend 'traditional notions of fair play and substantial justice.'" *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). *See also Tamburo v. Dworkin*, 601 F.3d 693, 701 (7th Cir 2010) ("Nor is the maintenance of a public Internet website sufficient, without more, to establish general jurisdiction.").

"For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). No such connection with this District is alleged. No acts alleged occurred in this District, and no relevant evidence can be found here. Where venue is improper, as in this case, so is jurisdiction. If the case belongs in any court, it does not belong here.

Unfounded venue allegations may warrant sanctions. *Methods Elecs., Inc. v. Adam Techs., Inc.*, 371 F.3d 923 (7th Cir. 2004). In *Fjeld*, the Seventh Circuit reversed sanctions in a copyright case filed in the right state but the wrong district, because no federal court of appeals had yet ruled on the issue, so the filing was not yet "contrary to existing circuit precedent." 8 F.3d at 449. But *Fjeld* settled the question in the Seventh Circuit twenty-five years ago. Ward could not have had a good-faith basis for filing in the wrong forum now.

And significantly, neither could his counsel, who must know better.

Liebowitz, who graduated from law school in 2015, brags that he has "personally

11

filed over a thousand copyright infringement lawsuits [] since January 2016." Doc. 18 ¶ 18. Yet for reasons exemplified in this case, he has a growing reputation as a "copyright troll," defined as one that "plays a numbers game in which it targets hundreds or thousands of defendants seeking quick settlements priced just low enough that it is less expensive for the defendant to pay the troll rather than defend the claim." *McDermott v. Monday Monday LLC*, No. 17-cv-9230 (DLC), 2018 U.S. Dist. LEXIS 28664, *8 n.4 (S.D.N.Y. Feb. 22, 2018).[2] He also has a reputation as a sanctionable, vexatious litigant; several judges have found "particularly concerning Mr. Liebowitz's repeated failures to follow the orders and rules of this Court and others within the district, as well as his propensity to take unreasonable positions and to omit crucial facts—or even to make outright misrepresentations—in an apparent attempt to increase costs and to extort unwarranted settlements." *Pereira v. 3072541 Can., Inc.*, No. 17-cv-6945 (RA), 2018 U.S. Dist. LEXIS 195406, *7-8 (S.D.N.Y. Nov. 15, 2018) (collecting cases). "Indeed, it is no exaggeration to say that there is a growing body of law in this District devoted to the question of whether and when to impose sanctions on Mr. Liebowitz alone." *Rice v. Universal Media LLC*, No. 19-cv-447 (JMF), 2019 U.S. Dist. LEXIS 114690, *1 (S.D.N.Y. July 10, 2019). Several courts "have now begun to regularly require plaintiffs represented by Mr. Liebowitz to file bonds before proceeding further with his lawsuits,

---

[2] When Liebowitz disputed the appellation as pejorative, the *Monday Monday* court noted with alacrity that he had "filed over 700 cases in [the Southern District of New York] since 2016 asserting claims of copyright infringement," of which more than 500 were "voluntarily dismissed, settled, or otherwise disposed of before any merits-based litigation. In most cases, the cases are closed within three months of the complaint filing." *Id.*, 2018 U.S. Dist. LEXIS 184049, *1 & *5 (S.D.N.Y. Oct. 26, 2018). "As evidenced by the astonishing volume of filings coupled with an astonishing rate of voluntary dismissals and quick settlements in Mr. Liebowitz's cases in this district, it is undisputable that Mr. Liebowitz is a copyright troll." *Id.* at *9.

after a number of them were dismissed as frivolous from the bench or voluntarily dismissed by the plaintiff when it was made clear that the suits were subject to dismissal." *Stridiron v. Cmty. Broadcasters, LLC*, No. 5:19-cv-108 (MAD/ATB), 2019 U.S. Dist. LEXIS 103805, *11 (N.D.N.Y. June 21, 2019).

As shall be explained, Liebowitz has not disputed that this case belonged in the Northern District since at least October 4, 2018, eighteen days after it was filed, but he has stayed the course toward default here ever since.

Copyright plaintiffs in Chicago are mandated by the Local Rules to retain local counsel. N.D. Ill. Local Rule 83.15(a). Apparently to avoid those costs, Liebowitz has filed this case and six other copyright actions in this District over the last year, despite knowing that they belong in the Northern District. See *Craig v. PopMatters Media, Inc.*, No. 18-cv-1713 (S.D. Ill. filed Sept. 11, 2018); *Stridiron v. The India Tribune of Chicago, Inc.*, No. 18-cv-1733 (S.D. Ill. filed Sept. 17, 2018); *Yang v. BlackDoctor, Inc.*, No. 18-cv-1733 (same); *Sadowski v. Block Communications, Inc.*, No. 18-cv-2015 (S.D. Ill. filed Oct. 24, 2018); *Geerds v. TreeTop Wealth Management, LLC*, No. 19-cv-335 (S.D. Ill. filed Mar. 21, 2019) (transferred to N.D. Ill. May 17, 2019); *Adlife Marketing & Communications Company*, No. 19-cv-513 (S.D. Ill. filed May 15, 2019).[3] Indeed, when one of his cases was transferred and the Northern District advised the parties of the local rule requiring an appearance by local counsel, Liebowitz's client agreed to settle the case the next day. See Rule 83.15 Letter, *Geerds*, No. 19-cv-3424 (N.D. Ill. entered May 21, 2019); Notice of Voluntary Dismissal, *id.* (filed May 22, 2019).

In *Craig*, the first copyright action Liebowitz brought in this District on behalf of

---

[3] Liebowitz's diversion to this District represents a small copyright litigation boom. Until 2018, this District had seen an average of two copyright lawsuits per year this decade.

13

a New York photographer against a Chicago defendant, the defendant was represented by undersigned counsel, months before Defendant engaged undersigned counsel in this case. Declaration of Dan Booth ¶ 3. Upon an explanation that jurisdiction was unfounded and venue was improper, Liebowitz readily agreed to transfer that case on October 4, 2018. *Id.* ¶ 4 & Ex. 1 ("We are happy to transfer venue if your client wishes and will litigate in the Northern District").[4] In response the same day, undersigned counsel offered the same explanation as to the *Ward* case and Liebowitz's other then-pending actions:

> While you're at it, I note that you filed three other cases in the Southern District of Illinois against Chicago businesses last month: Stridiron v. The India Tribune of Chicago, inc. (18-cv-1732), Yang v. BlackDoctor, inc. (18-cv-1733), and Ward v. Consequence Holdings, LLC (18-cv-1734). You can't have had a good faith basis for filing those cases downstate or continuing to pursue them there. Please inform when those cases are in the Northern District as well. Thank you.

*Id.* ¶ 5 & Ex. 2. So Liebowitz has been on notice since October 4, 2018 that this case does not belong in this Court. He soon heard the same straight from Defendant:

> It is our contention that there is no basis for this lawsuit. The lawsuit was filed in the Southern District of Illinois (St Louis, MO), which does not have jurisdiction over Consequence Holdings (Cook County, IL).

Young Decl. ¶ 6 & Ex. 3 p. 1. Since October, Liebowitz has heard from both Defendant and its counsel (before Defendant engaged counsel) that this Court has no personal jurisdiction over the Chicago-based Defendant, and he has never disputed it. Through him, Ward has wrongfully maintained this action for nine months without basis.

### B. Defendant has meritorious defenses to the 17 U.S.C. § 1202(b) claim.

Defendant raises such serious questions as to the propriety of the DMCA claim raised under 17 U.S.C. § 1202(b) that it must not be litigated on the basis of a default.

---

[4] Despite that threat, Liebowitz voluntarily dismissed the *Craig* action and it has not been renewed elsewhere. See Notice of Dismissal, *Craig* (S.D. Ill. filed Dec. 17, 2018).

14

The Digital Millennium Copyright Act of 1998 ("DMCA") prohibits the removal or alteration of "copyright management information," which is defined to include identifying information about the author of a work, "conveyed in connection with" the work. 17 U.S.C. § 1202(c). Pursuant to the DMCA,

> No person shall, without the authority of the copyright owner or the law --
>
> (1) intentionally remove or alter any copyright management information,
>
> (2) distribute or import for distribution copyright management information knowing that the copyright management information has been removed or altered without authority of the copyright owner or the law, or
>
> (3) distribute, import for distribution, or publicly perform works, copies of works, or phonorecords, knowing that copyright management information has been removed or altered without authority of the copyright owner or the law,
>
> knowing, or, with respect to civil remedies under section 1203, having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this title.

17 U.S.C. § 1202(b). Ward does not state a viable claim under that statute. He alleges that Defendant copied the Shmurda photograph from the *Daily News* article and placed it on its website with its own article about Shmurda. Doc. 1 ¶¶ 11 & 19. In so doing, Ward alleges, Defendant "intentionally and knowingly removed copyright management information identifying Plaintiff as the photographer" from the Shmurda photograph. *Id.* ¶ 20. Specifically, the *Daily News* ran Ward's name in a "gutter credit underneath the photograph" that did not appear on Defendant's website. *Id.* ¶ 19.

Those allegations do not add up to a plausible DMCA violation. Defendant does not dispute that a photographer's name in a "gutter credit" can constitute "copyright management information" under the statute. But Defendant adamantly denies that copying an intact photographic image from a website, without touching the gutter credit

15

beneath it, in any way "removes" the photograph from the credit when they were already distinct. Copying the photograph wholesale as alleged may amount to copyright infringement; but it would not entail removing, altering, or falsifiyng the separate credit. There is no plausible allegation that Ward's credit was actively cropped out or stripped. The credit was not integral to the photograph, but appeared underneath it independently.

Thus, even taking the allegations as true, Defendant did not remove any copyright management information from the *Daily News* website; it was simply not employed and reproduced in Defendant's website. See *Fischer v. Forrest*, No. 14 Civ. 1304 (PAE) (AJP), 2017 U.S. Dist. LEXIS 109682, *47-48 (S.D.N.Y. July 17, 2017). The DMCA concerns *removal* of copyright management information, not merely *omitting* it. *Design Basics, LLC v. Big C Lumber Co.*, No. 3:16-cv-53-HAB, 2019 U.S. Dist. LEXIS 121428, *40-41 (N.D. Ind. July 22, 2019). "The term 'removed' cannot be written out of the statute." *GC2 Inc. v. Int'l Game Tech.*, Case No. 16 C 8794, 2018 U.S. Dist. LEXIS 192606, *17 (N.D. Ill. Nov. 12, 2018). "Section 1201(b)(1) applies only to the removal of copyright management information on (or from) a plaintiff's product or original work." *Monotype Imaging, Inc. v. Bitstream, Inc.*, 376 F. Supp. 2d 877, 893 (N.D. Ill. 2005) Ward's work was the Shmurda photograph, used wholesale on Defendant's website, but the *Daily News* site was not his work, and his work did not include the credit.

"[N]o allegations in the complaint give rise to the inference that the defendant 'knowingly' provided a false photo credit or itself 'remove[d] or alter[ed]' an existing photo credit." *Michael Grecco Prods. v. Function(X), Inc.*, No. 18 Civ. 386 (NRB), 2019 U.S. Dist. LEXIS 41738, *4 (S.D.N.Y. Mar. 11, 2019). The DMCA allegations are made "upon information and belief," so they are hardly well-pleaded, and far from established.

They are little but legal conclusions dressed up as factual allegations, entitled to no credence. See *Aschroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Ward also fails to substantiate the "double-scienter requirement" for DMCA claims under 17 U.S.C. § 1202(b). See *GC2 Inc.*, 2019 U.S. Dist. LEXIS 11674, *14 (N.D. Ill. July 15, 2019) (citing among others *Stevens v. CoreLogic, Inc.*, 899 F.3d 666, 674 (9th Cir. 2018)). "That is, to satisfy the statute, [Ward] had to show that [Defendant] … in the case of removal or alteration of copyright management information, 'intentionally'—undertook the violative actions either with 'intent to' or 'knowledge, or … having reasonable grounds to know' that its actions 'will induce, enable, facilitate, or conceal' infringement." *Id.* at *14-15. Defendant has consistently denied "the claim that we intentionally and maliciously posted the photograph and removed its attribution." Young Decl. ¶ 6 & Ex. 3 p. 1. Absent plausible allegations of a specific intent to remove the credit, and an intent to do so in order to facilitate or conceal infringement, the complaint does not state a valid DMCA claim and cannot support a judgment for Ward.

### C. Defendant has meritorious defenses to the damages claimed.

Even if default were proper, "the plaintiff must still establish his entitlement to the relief he seeks." *In re Catt*, 368 F.3d 789, 793 (7th Cir. 2004). Ward has utterly failed on that front. Rather than prove up any damages, he draws numbers out of a hat—quite an expensive hat, at that. He seeks awards totaling nearly $19,000 for the use of a single, outdated news photograph. Such disproportionate relief alone would constitute good cause to vacate. See *Sims v. EGA Prods.*, 475 F.3d 865, 868 (7th Cir. 2007).

Ward "estimates that he would have been entitled to charge up to $1500.00" for Defendant's use of the photograph. Doc. 18 p. 3. That is not the test; in this Circuit, the

17

question is not what the plaintiff might have charged but what both parties might have agreed to, in a hypothetical licensed use: "[i]t is not improper for a jury to consider either a hypothetical lost license fee or the value of the infringing use to the infringer to determine actual damages, provided the amount is not based on 'undue speculation.'" *Bell v. Taylor*, 827 F.3d 699, 709 (7th Cir. 2016) (citations omitted). In one recent case, finding such undue speculation, a court denied the actual damages Liebowitz's client claimed. See *Renna v. Queens Ledger/Greenpoint Star, Inc.*, No. 17-cv-3378 (DRH) (SIL), 2019 U.S. Dist. LEXIS 24452, *10-12 (E.D.N.Y. Feb. 13, 2019) (citing *Davis v. The Gap, Inc.*, 246 F.3d 152, 166-67 (2d Cir. 2001)). In another recent Liebowitz case, the court found that "the highest licensing fee that [his client photographer] charges on photo licensing websites appears to be $220 for a single photograph." *Mango v. Democracy Now! Prods.*, 2019 U.S. Dist. LEXIS 123550, *12 (S.D.N.Y. July 24, 2019). The $1500 estimate is unfounded and should be ignored.

Ward also asks the Court to draw all inferences against Defendant regarding any profits from the use and contends that, "it is unknown what profits Defendant generated from the exploitation of the Photograph." Doc. 18 ¶ 13. Defendant freely proffered evidence to Liebowitz in October that the total profits generated from the 2016 article that included the Photo appeared were no more than $40, and he has never disputed that evidence. Young Decl. ¶¶ 5-6 & Ex. 2 p. 2, Ex. 3 p. 1. And while no DMCA claim is viable against Defendant, even the theoretical award sought is unsupported. That two other courts have settled on $10,000 as an award of statutory damages under Section 1202 fails to justify the figure in this case. See Doc. 18 ¶ 16. See also *Nat'l Hair Growth Ctrs. of Ariz., LLC v. Edmund*, No. 3:19-cv-00026-H-BGS, 2019 U.S. Dist. LEXIS 88202,

*21-22 (S.D. Cal. May 23, 2019) (awarding minimum statutory damages of $2500 per DMCA violation and collecting cases with the same award); *Schwabel v. HPT Serv., LLC*, No. 3:17-cv-791-J-34JBT, 2018 U.S. Dist. LEXIS 171820, *10-12 (M.D. Fla. Sept. 6, 2018) (same). Thus, all of the damages claims are either unsupported or so speculative that they must be determined on the merits, not through a default.

### Conclusion

"This circuit has a well-established policy favoring a trial on the merits over a default judgment." *C.K.S. Engineers, Inc. v. White Mountain Gypsum Co.*, 726 F.2d 1202, 1205 (7th Cir. 1984). "[D]efaults should be entered only when absolutely necessary, such as where less drastic sanctions have proven unavailing. … [A] district court abuses its discretion when it enters a default in inappropriate circumstances and then fails to set aside the default[.]" *Id.* at 1206. In these circumstances—an improperly obtained default against a defendant who litigates expeditiously upon notice and has meritorious defenses—it would be well within the Court's discretion to set the default aside.

Therefore, Defendant respectfully requests that the Court set aside the entry of default. Doc. 13. Further, upon removing the default, Defendant requests that the Court find that the motion for default judgment is moot. Doc. 17.

                                            Respectfully,

                                            / s /  Dan Booth
                                            Dan Booth
                                            Dan Booth Law LLC
                                            60 Thoreau Street #121
                                            Concord, MA 01742
                                            dan@danboothlaw.com

                                            *Counsel for Defendant*
                                            *Consequence Holdings, LLC*