## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JESSE WARD, | ) | Civil No. 3:18-cv-01734-NJR-MAB |
| | ) | |
| Plaintiff, | ) | **DEFENDANT CONSEQUENCE** |
| v. | ) | **HOLDINGS, LLC'S MOTION** |
| | ) | **TO DISMISS AND MOTION** |
| CONSEQUENCE HOLDINGS, INC., | ) | **FOR ATTORNEY'S FEES** |
| | ) | |
| Defendant. | ) | |
| | ) | |

This action has no rational nexus with this judicial district. Plaintiff Jesse Ward ("Ward") is a photographer based in New York and Defendant Consequence Holdings, LLC[1] ("Consequence") is a publisher based in Chicago. Consequence moves to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) and (3) and 28 U.S.C. § 1406(a) because this Court does not have personal jurisdiction over Consequence and this venue is improper.

Ward's counsel Richard Liebowitz ("Liebowitz") knew of that impropriety but paid it no heed. After he filed the complaint in the wrong Court, he offered Consequence an unlimited extension of time to respond, but he cut off settlement discussions and went behind Consequence's back to obtain entry of default without notice, violating the Court's Local Rules. Liebowitz forced Consequence to litigate a motion to set aside the default, oppose Ward's motion for default judgment, and move to dismiss this action from a forum where it never belonged. Pursuant to 28 U.S.C. § 1927 and the Court's inherent authority, Consequence further submits this motion for an order requiring Liebowitz to personally satisfy the excess attorney's fees Consequence has reasonably incurred because of his bad-faith, vexatious litigation.

In support of this motion, Consequence states as follows.

---

[1] The complaint erroneously identifies Consequence as "Consequence Holdings, Inc."

## Factual Background

In September 2018, Liebowitz filed four copyright infringement actions in this
district on behalf of New York-based photographers against Chicago-based businesses:
*Craig v. PopMatters Media, Inc.*, No. 3:18-cv-1713, on September 11, 2018; and
*Stridiron v. The India Tribune of Chicago, Inc.*, No. 3:18-cv-1732, *Yang v. BlackDoctor,
Inc.*, No. 3:18-cv-01733, and this action, on September 18, 2018. Doc. 1; Doc. 26 p. 13.

On October 4, 2018, months before Consequence engaged its undersigned
counsel, he informed Liebowitz that personal jurisdiction and venue over those Chicago-
based defendants were improper in this district. Doc. 26-6 & 26-8. Liebowitz offered to
transfer *Craig* to the Northern District of Illinois but maintained the other three actions in
this district well after undersigned counsel had advised him, "You can't have had a good
faith basis for filing those cases downstate or continuing to pursue them there." *Id.*

Consequence's principal office is in Chicago. Doc. 1 ¶ 6; Doc. 26-1 ¶ 13. Process
was served on its registered agent in Chicago on September 25, 2018. Doc. 26-1 ¶ 3.
Consequence received the summons and complaint on October 12, 2018. *Id*. ¶ 4. On
October 18, 2018, Consequence founder and publisher Alex Young ("Young") emailed
Liebowitz, offered to make amends for the unlicensed use, and requested an extension:

> I would propose an amicable solution in which we compensate Mr. Ward
> for his normal rate for a published photograph. … In the interim, I would
> also ask that you provide an extension on the 21-day summons deadline.

*Id*. ¶ 5 & Doc. 26-3 p. 1. Liebowitz responded that day with a settlement offer. *Id.* Young
replied that afternoon, again requesting an extension during settlement negotiations. Doc.
26-1 ¶ 5 & Doc. 26-3 p. 2. Liebowitz responded that evening, "Thank you. We will agree
to the extension, how long do you need?" *Id.* The next day, October 19, 2018, Young and

Liebowitz proposed to continue discussions the following week. Doc. 26-1 ¶ 5 & Doc. 26-3 pp. 2-3. On October 25, 2018, Young sent Liebowitz a letter, stating Consequence's position "that there is no basis for this lawsuit. The lawsuit was filed in the Southern District of Illinois (St Louis, MO), which does not have jurisdiction over Consequence Holdings (Cook County, IL)." Doc. 26-1 ¶ 6 & Doc. 26-4 p. 1. He reiterated the point, asking: "Confirm you have a basis to sue us in the Southern District of Illinois (St Louis, MO), the venue the complaint was filed in, which, from our research, does not have jurisdiction over Consequence Holdings (Cook County, IL)[.]" *Id.* Liebowitz's firm received the letter on October 29, 2018. Doc. 26-1 ¶ 7 & Doc. 26-5. Liebowitz did not respond, and discontinued communications with Consequence. Doc. 26-1 ¶ 8.

On December 21, 2018, the Court issued the first of four notices of impending dismissal for want of prosecution. Doc. 7. Liebowitz filed the summons that day. Doc. 8. On December 26, 2018, the Court issued a second notice of impending dismissal, this time ordering that Consequence would be dismissed unless Ward moved for a clerk's entry of default. Doc. 9. The Court further directed: "Plaintiff should be sure to follow the requirements of Local Rule 55.1 when filing his motion for entry of default." *Id.* The rule mandates, among other things: "The serving party shall give notice of the entry of default to the defaulting party by regular mail sent to the last known address of the defaulted party and shall certify to the Court that notice has been sent." Local Rule 55.1(a).

Without a motion for entry of default, Liebowitz filed a declaration in support of such a motion on January 24, 2019. Doc. 11. Despite the Court's instruction to comply with Local Rule 55.1, he neither mailed notice of the entry of default to Consequence nor certified that notice had been sent. Doc. 26-1 ¶ 10.

The Clerk entered the default on January 25, 2019. Doc. 13.

The Court's third notice of impending dismissal for want of prosecution, on April 1, 2019, gave Ward three weeks to move for default judgment pursuant to Fed. R. Civ. P. 55(b) or the case would be dismissed. Doc. 16. On April 22, 2019, Liebowitz filed Ward's motion for default judgment and supporting declaration and exhibits. Doc. 17 & 18. None of his filings acknowledged his failures to comply with Local Rule 55.1 or his awareness that this Court is not a proper forum. *Id.*

On May 8, 2019, the Court found that Ward had not complied with Local Rule 55.1(b) and ordered him to affirm mailing his default judgment motion to Consequence. Doc. 19. On June 27, 2019, the Court entered a fourth notice of impending dismissal and ordered Ward to comply with its May 8 order by July 11 or the case would be dismissed. Doc. 20. Liebowitz filed a certificate of service on July 11, 2019. Doc. 21. Consequence first learned of the default when it received the default judgment motion on or about July 17, 2019. Doc. 26-1 ¶ 11. Consequence retained counsel on August 1, 2019. *Id.* ¶ 12.

On August 2, 2019, Consequence moved to set aside the default, emphasizing the jurisdictional and venue issues. Doc. 25; Doc. 26 pp. 9-14. Consequence responded to the default judgment motion the next day. Doc. 27. The Court set aside the default and denied the default judgment motion on August 19, 2019. Doc. 29. That day, undersigned counsel emailed Liebowitz and asked him to dismiss or move to transfer, stating:

> This morning the Southern District of Illinois set aside the default you obtained against my client Consequence Holdings, LLC. As the motion to set aside explained, your allegations of personal jurisdiction and venue there are frankly frivolous. Consequence is a Chicago-based company and the plaintiff is based in New York. The case has no nexus to the Southern District, like all of your cases in that Court. All litigation there has been improper and unnecessary.

> The Court expects prompt action. I expect you to immediately file — today — a notice of dismissal under to Rule 41, or a motion to transfer to the Northern District. Otherwise I will be forced to prepare a motion to dismiss.

Declaration of Dan Booth ("Booth Decl.") ¶ 3 & Ex. A. Liebowitz responded with a request for a joint stipulation to the transfer. *Id.* ¶ 4 & Ex. A. Undersigned counsel replied that same day, stating in pertinent part:

> We will stipulate to a transfer if you stipulate to pay Consequence's costs and fees incurred to date, dismiss the Section 1202 claim, and permit Consequence three weeks to answer the complaint after transfer.
>
> As explained in Consequence's motion to set aside, you knew that it was frivolous to pursue default and default judgment in the Southern District. You forced my client to incur unnecessary expenses. If you proceed in the Northern District, we expect to recover those expenses under Rule 41(d). As also explained in the motion, the Section 1202 claim is without basis.

*Id.* ¶ 5 & Ex. A. Counsel further served a Rule 68 offer of judgment attached to that email.

Liebowitz did not respond to the email or the offer. *Id.* ¶ 6.

## Legal Standards

### I.    Personal Jurisdiction and Venue

A Rule 12(b)(2) motion disputes the Court's jurisdiction over the defendant. Personal "jurisdiction requires a forum-by-forum … analysis." *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 884 (2011). "To determine whether exercising personal jurisdiction is proper, a court may receive and weigh affidavits prior to trial on the merits." *Nelson v. Park Indus.*, 717 F.2d 1120, 1123 (7th Cir. 1983). "[O]nce the defendant has submitted affidavits or other evidence in opposition to the exercise of jurisdiction, the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Purdue Res. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 783 (7th Cir. 2003).

The Court may also look beyond the complaint on a Rule 12(b)(3) motion, which contends that venue is improper. *Faulkenberg v. CB Tax Franchise Sys., L.P.*, 637 F.3d 801, 809-10 (7th Cir. 2011). "Where one party makes a bald claim of venue and the other party contradicts it, a district court may look beyond the pleadings to determine whether the chosen venue is appropriate." *Deb v. Sirva, Inc.*, 832 F.3d 800, 809-10 (7th Cir. 2016).

## II.    28 U.S.C. § 1927 and the Court's Inherent Authority

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927.

[A] court has discretion to impose § 1927 sanctions when an attorney has acted in an "objectively unreasonable manner" by engaging in "serious and studied disregard for the orderly process of justice," *Pacific Dunlop Holdings, Inc. v. Barosh*, 22 F.3d 113, 119 (7th Cir. 1994); pursued a claim that is "without a plausible legal or factual basis and lacking in justification," *id.*; or "pursue[d] a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound," *Kapco Mfg. Co. v. C & O Enters., Inc.*, 886 F.2d 1485, 1491 (7th Cir. 1989).

*Jolly Grp., Ltd. v. Medline Indus, Inc.*, 435 F.3d 717, 720 (7th Cir. 2006).

"A lawyer's subjective bad faith is a sufficient, but not necessary, condition for § 1927 sanctions; objective bad faith is enough." *In re Lisse*, 921 F.3d 629, 641 (7th Cir. 2019) (citing *Hunt v. Moore Bros., Inc.*, 861 F.3d 655, 659 (7th Cir. 2017). "Attorneys demonstrate objective bad faith when they pursue 'a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound.'" *Id.* (quoting *Bell v. Vacuforce, LLC*, 908 F.3d 1075, 1082 (7th Cir. 2018)). "The standard for objective bad faith does not require a finding of malice or ill will; reckless indifference to the law will qualify." *Dal Pozzo v. Basic Mach. Co.*, 463 F. 3d 609, 614 (7th Cir. 2006) (*citing In re*

6

*TCI Ltd.*, 769 F.2d 441, 445 (7th Cir. 1985)). "Because trial judges are best positioned to detect bad faith litigation conduct, they possess broad discretion in exercising the § 1927 power." *Lisse*, 921 F.3d at 641.

Section 1927 sanctions may be imposed for either factual claims or legal arguments without support. "Under § 1927, sanctions for filing a baseless claim properly may be imposed where those claims are not supported by the facts." *Walter v. Fiorenzo*, 840 F.2d 427, 435 (7th Cir. 1988) (affirming award against counsel for filing complaint without sufficient factual basis against a defendant). The Seventh Circuit "has upheld section 1927 sanctions ... [when] counsel raised baseless claims despite notice of the frivolous nature of these claims..." *Kotsilieris v. Chalmers*, 966 F.2d 1181, 1184 (7th Cir. 2003) (collecting cases).

The Court also has the inherent power to "assess attorney's fees when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991) (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240, 258-59 (1975)). Whether under Section 1927 or the Court's inherent authority, it may sanction counsel "for willfully abusing the judicial process and/or pursuing a bad-faith litigation strategy by initiating this litigation in a patently inappropriate forum." *Boyer v. BNSF Ry. Co.*, 832 F.3d 699, 702 (7th Cir. 2016).

### Argument

Liebowitz knew that this Court has no personal jurisdiction over Consequence, a Chicago-based web publisher. He nevertheless prosecuted his client's claim here toward default judgment, forcing Consequence to fend off the default he obtained in violation of the Court's Local Rules. He has not taken the steps required to transfer or withdraw the

action, foisting those costs on Consequence as well. The case should be dismissed and Liebowitz should be obligated to pay all of the needless costs he has imposed.

I.      **This action was brought in an improper venue and must be dismissed.**

The claims must be dismissed because they have no connection to the Southern District of Illinois. No party resides or conducts business here, as Ward lives in New York and Consequence is based in Chicago. None of the acts alleged in the complaint occurred here. No injury was suffered here. No relevant evidence can be found here.

Copyright litigation "may be instituted *in the district* in which the defendant or his agent resides or may be found." 28 U.S.C. § 1400(a) (emphasis added). "Thus, section 1400(a) itself requires that a defendant be found in a particular judicial district, rather than in the state in which the district court sits." *Milwaukee Concrete Studios, Ltd. v. Fjeld Mfg. Co.*, 8 F.3d 441, 446 (7th Cir. 1993). "[S]ection 1400(a)'s 'may be found' clause has been interpreted to mean that a defendant is amenable to personal jurisdiction in a particular forum." *Id.* at 445. The Seventh Circuit holds "that section 1400(a) requires district courts to consider a defendant's contacts with a particular judicial district in determining where that defendant may be found. A defendant's amenability to personal jurisdiction must relate to the judicial district in which the action was filed to place venue there under section 1400(a)." *Id.* "The section 1400(a) inquiry must … focus on contacts with the particular federal judicial district in which the copyright action has been filed." *Id.* at 446. Accordingly, courts in this Circuit analyze venue in copyright infringement actions by treating each judicial district as if it were its own state. *Philpot v. Gray TV, Inc.*, No. 14-cv-01977-JMS-DML, 2015 U.S. Dist. LEXIS 41662, *2-3 (S.D. Ind. Feb. 20, 2015); accord *Millennium TGA, Inc. v. Doe*, No. 10 C 5603, 2011 U.S. Dist.

LEXIS 110135, *8 (N.D. Ill. Sept. 26, 2011) ("the personal jurisdiction analysis is directly tied to the determination of whether venue is appropriate").

"The plaintiff bears the burden of establishing personal jurisdiction." *Advanced Tactical Ordinance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 799 (7th Cir. 2014). Likewise, "Plaintiff has the burden of establishing proper venue." *Grantham v. Challenge-Cook Bros.*, 420 F.2d 1182, 1184 (7th Cir. 1969). Ward cannot satisfy his burden. He proffers no evidence that would justify claiming either personal jurisdiction or venue is proper here. No relevant contacts with the Southern District of Illinois exist.

Consequence operates *Consequence of Sound*, an online music and film magazine at consequenceofsound.com. Doc. 1 ¶¶ 6 & 11. Its principal office is at 4609 Wolcott Avenue in Chicago. *Id.* ¶ 6; Doc. 26-1 ¶ 13. That is in Cook County, outside this district. Doc. 1-6 ¶ I. As Young explained, Consequence "does not reside, transact business, or have a place of business in the Southern District of Illinois." Doc. 26-1 ¶ 13. Ward does not dispute it; he did not respond to Young's letter declaring that the Court lacks personal jurisdiction, or to Consequence's motion demonstrating it. *Id.* ¶¶ 6-8; Doc. 26 pp. 9-11.

Ward also has not claimed any genuine connection to the forum for himself. He is a New York photographer whose usual place of business and residence are in Brooklyn. Doc. 1 ¶ 5; Doc. 1-3 p. 9. His allegations concern the use of a photograph he took in the Brooklyn Supreme Court of Brooklyn musician Bobby Shmurda after it ran in the *New York Daily News*. Doc. 1 ¶¶ 1 & 7-8; Doc. 1-2. He does not allege that he does any business or suffered any injury in this district.

As the Court recognizes, "the alleged wrong took place in New York, and Ward has not alleged any connection with the Southern District of Illinois." Doc. 29 pp. 3-4.

Ward's only jurisdictional allegation is: "This court has personal jurisdiction over Defendant because Defendant resides in and/or transacts business in Illinois." Doc. 1 ¶ 3. That cannot suffice in a state with multiple judicial districts under *Fjeld*, as the pleading elsewhere acknowledges Consequence's place of business is in Chicago. *Id.* ¶ 6. The only venue allegation: "Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)." *Id.* ¶ 4. That both misstates the law and fails to apply it to Consequence. The copyright venue statute, 28 U.S.C. § 1400(a), governs this action. *Atl. Marine Constr. Co. v. United States Dist. Ct.*, 571 U.S. 49, 55 n. 2 (2013); see Doc. 26 p. 10.

Even if Section 1391, the general venue statute, were applicable, it would not reach Consequence in Chicago. It provides that venue is only proper in a judicial district where a defendant "resides," or where "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is subject to the action is situated," or where a defendant "is subject to the court's personal jurisdiction." 28 U.S.C. §§ 1391(b)(1)-(3). Nothing about this case happened in this district before it was filed here. Ward holds the copyright in New York, so the property is not "situated" here. See Doc. 1-3 p. 9. And "in a State which has more than one judicial district," a corporation is said to "reside" in a district where it is subject to personal jurisdiction. 28 U.S.C. § 1391(d). That is in the Northern District of Illinois, not here. "Section 1391(d) directs the court to choose among the districts in the state by looking to whether the corporate defendant's *contacts* with the district would subject it to personal jurisdiction if the district were a single state." *KM Enters., Inc. v. Global Traffic Techs., Inc.*, 725 F.3d 718, 726 (7th Cir. 2013) (emphasis in original).

Neither general nor specific jurisdiction applies. A defendant is subject to general jurisdiction when it has "continuous and systematic business contacts" with the forum. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415-16 (1984). "The threshold for general jurisdiction is high; the contacts must be sufficiently extensive and pervasive to approximate physical presence." *Tamburo v. Dworkin*, 601 F.3d 693, 701 (7th Cir 2010). A defendant is subject to specific personal jurisdiction when its contacts with the forum "directly relate to the challenged conduct or transaction." *Id.* at 703. Consequence has no business contacts with the Southern District of Illinois and nothing like a physical presence in this judicial district. It has not caused Ward any injury in this district or aimed any conduct at him here, or anywhere else.

True, Consequence's website can be accessed in this district. Doc. 1 ¶ 6; Doc. 26 p. 10. But "[h]aving an 'interactive website' (which hardly rules out anything in 2014) should not open a defendant up to personal jurisdiction in every spot on the planet where that interactive website is accessible. To hold otherwise would offend 'traditional notions of fair play and substantial justice.'" *Advanced Tactical Ordinance*, 751 F.3d at 803 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). *See also Tamburo*, 601 F.3d at 701 ("Nor is the maintenance of a public Internet website sufficient, without more, to establish general jurisdiction."); *Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 549-50 (7th Cir. 2004).

Because this action was filed in this district with no basis for personal jurisdiction or venue, it must be dismissed pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(3) and 28 U.S.C. § 1406(a). "The district court of a district in which a case is filed laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer

11

such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).[2] "A court is to dismiss when a case is filed in the wrong venue, *unless* it is in the interests of justice to transfer the case to a venue where it could have properly been brought." *Rotex Global, LLC v. Gerard Daniel Worldwide, Inc.*, No. 16-cv-523-wmc, 2017 U.S. Dist. LEXIS 187779, *8 n. 7 (W.D. Wisc. Nov. 14, 2017) (emphasis added).

Under Section 1406, only dismissal is proper. A transfer would not serve the interest of justice because Ward's counsel has litigated inequitably. A transfer to accommodate a plaintiff's "blatant forum shopping" is not in the interest of justice. *Wood v. Santa Barbara Chamber of Commerce*, 705 F.2d 1515, 1522 (9th Cir. 1983). See also *id.* at 1523 ("Justice would not have been served by transferring Wood's claims back to a jurisdiction that he purposefully sought to avoid."). In this case,

> … there is a strong inference of forum-shopping from [plaintiff's] attempt to lay venue in a district in which neither party has its principal place of business; from [plaintiff's] assertions of personal jurisdiction and venue based on plainly untenable arguments, where it is clear that [defendant] has only the most attenuated contacts with this forum and this forum has only the most attenuated relationship to the conduct giving rise to the … infringement claim; and from the fact that the inconvenience of the forum, in which both parties are strangers, would lay most heavily on [defendant].

> *Gro Master, Inc. v. Farmweld, Inc.*, 920 F. Supp. 2d 974, 991 (N.D. Iowa 2013)

(denying transfer under Section 1406(a)).

Justice would not be served by merely transferring the case to the proper venue without cost to Ward or his counsel. Despite ample notice that this case does not belong in this Court, Ward's counsel proceeded here headlong. Consequence was forced to

---

[2] The *forum non conveniens* provision of 28 U.S.C. § 1404(a) does not apply. "Although both sections were broadly designed to allow transfer instead of dismissal, § 1406(a) provides for transfer from forums in which venue is wrongly or improperly laid, whereas, in contrast, § 1404(a) operates on the premise that the plaintiff has properly exercised his venue privilege." *Van Dusen v. Barrack*, 376 U.S. 612, 634 (1964). Selecting this venue was improper, not merely "inconvenient." *Id.*

expend funds to retain counsel and enter an appearance in this Court, move to set aside the default, oppose the motion for default judgment, and file this motion to dismiss. "The proper penalty for obvious mistakes that impose costs on opposing parties and on the judicial system is a heavy one." *Cote v. Wadel*, 796 F.2d 981, 985 (7th Cir. 1986). Dismissal will best serve the interest of justice, along with deterrent sanctions, because "litigants and the public will benefit substantially in the long run from better compliance with the rules limiting personal jurisdiction." *Id.*

## II.    Attorney Liebowitz must bear the excess costs of this frivolous litigation.

Liebowitz knew that this lawsuit did not belong here. He filed and pursued it in this Court anyway, to spare himself the costs of a proper filing in the Northern District of Illinois. He agreed to an open-ended extension of time for Consequence to answer the complaint, then turned around and moved for a default without giving the notice required by Local Rule 55.1, violating a specific Court order to comply with that rule. He then moved for a default judgment, still well aware that jurisdiction and venue were improper, needlessly increasing the costs of litigation for Consequence. Under Section 1927 or the Court's inherent authority, he must be ordered to pay Consequence the costs he imposed.

Liebowitz multiplied the proceedings, unreasonably and vexatiously, by raising this action in the wrong Court without sufficiently investigating the allegations of personal jurisdiction and venue. Section 1927 sanctions are proper where a plaintiff's investigation is "patently inadequate" and its claims have "no chance to prevail." *Tillman v. New Line Cinema*, 374 Fed. App'x 664, 666 (7th Cir. 2010). The Seventh Circuit has

found that filing suit in a court with "no connection to this case" warrants Section 1927 sanctions. *Boyer v. BNSF Ry. Co.*, 824 F.3d 694, 697 (7th Cir. 2016).[3]

"With due diligence, a plaintiff can almost always determine the propriety of venue in a preferred forum when the suit contemplated is one against a corporation." *Manley v. Engram*, 755 F.2d 1463, 1472 (11th Cir. 1985). There is no sign that Liebowitz exercised due diligence. His statement of fees filed on April 22, 2019, eight months into the case, does not reflect any time spent researching, determining, or even contemplating the propriety of venue. Doc. 18 p. 6. Young's October 25, 2018 letter had specifically informed him that this action is baseless as Consequence is not subject to personal jurisdiction in this Court. Doc. 26-1 ¶ 6 & Doc. 26-4. Young pointedly asked Liebowitz to "[c]onfirm you have a basis to sue us in the Southern District of Illinois …, which, from our research, does not have jurisdiction over Consequence Holdings[.]" *Id.* He has offered no rationale or justification for suing here in the year since.

Undersigned counsel had explained the same thing to Liebowitz even earlier. On October 4, 2018, counsel demonstrated to Liebowitz that personal jurisdiction and venue were improper in the *Craig* action he had filed earlier in this Court, and Liebowitz readily offered to transfer that action. Doc. 26-6 ¶¶ 3-4 & 26-7. Then, undersigned counsel told him, "you filed three other cases in the Southern District of Illinois against Chicago businesses last month … [including] Ward v. Consequence Holdings, LLC (18-cv-1734). You can't have had a good faith basis for filing those cases downstate or continuing to pursue them there." Doc. 26-6 ¶ 5 & 26-8. That explanation came before Consequence

---

[3] On rehearing, the Seventh Circuit modified *Boyer* to base the sanctions on its inherent authority, addressing concerns about the federal vexatious litigation statute's application to pre-removal filings in a state court. *Id.*, 832 F.3d 699 (7th Cir. 2016). Those concerns are not at issue here because Consequence seeks sanctions for litigation just in this Court.

received service of process, and more than nine months before it had retained its counsel. See Doc. 26-6 ¶¶ 3-4 & 12. Though that explanation was sufficient to motivate Liebowitz to dismiss *Craig* from this district, it could not deter him from pushing this action toward default judgment. Liebowitz refiled *Craig* in the Northern District of Illinois on August 19, 2019, but he has taken no steps to terminate and refile this action. His obstinacy forced Consequence to move to set aside and dismiss this groundless case.

Compounding the vexatious nature of this action, Liebowitz moved for the entry of default without service and obtained it without notice, in a violation of the local rule that mandates both "notice of the entry of default" to the defaulting party by mail, and certification that the notice was given. Local Rule 55.1(a). Liebowitz violated both of its requirements, despite the Court order specifically instructing, "Plaintiff should be sure to follow the requirements of Local Rule 55.1 when filing his motion for entry of default." Doc. 9. Furthermore, Liebowitz misled Consequence, giving neither notice of the January entry of default nor reason to expect it. Doc. 26-1 ¶¶ 8-10. He had granted Consequence an indefinite extension of time to respond to the complaint during settlement discussions. *Id.* ¶ 5; Doc. 26-3 p. 3. He then resumed motion practice without service, never informing Consequence that he was effectively rescinding that extension unilaterally.

Liebowitz's bad-faith maneuvering is best understood in the context of his pattern of frivolous litigation. He graduated from law school in 2015 and started filing copyright infringement lawsuits in New York the following January. Doc. 18 ¶ 18; see *Chevrestt v. CBS Broadcasting, Inc.*, No. 16-cv-523 (S.D.N.Y. filed Jan. 23, 2016). As of April 22, 2019, by his own reckoning, Liebowitz had "personally filed over a thousand copyright infringement lawsuits [] since January 2016." *Id.* By July his tally had reached "1,210

copyright suits in New York's federal trial courts" alone. Alison Frankel, *Manhattan federal judges are getting fed up with notorious 'copyright troll,'* REUTERS (July 11, 2019), at https://www.reuters.com/article/otc-troll/manhattan-federal-judges-are-getting-fed-up-with-notorious-copyright-troll-idUSKCN1U62PT. "As evidenced by the astonishing volume of filings coupled with an astonishing rate of voluntary dismissals and quick settlements in Mr. Liebowitz's cases, it is indisputable that Mr. Liebowitz is a copyright troll." *McDermott v. Monday Monday LLC*, No. 17-cv-9230 (DLC), 2018 U.S. Dist. LEXIS 184049, *9 (S.D.N.Y. Oct. 26, 2018); see Doc. 26 p. 12. Since 2016, Liebowitz has filed "roughly five lawsuits per week—or if you prefer, one lawsuit every single weekday." Justin Peters, *Why Every Media Company Fears Richard Liebowitz*, SLATE (May 24, 2018), at https://slate.com/news-and-politics/2018/05/richard-liebowitz-why-media-companies-fear-and-photographers-love-this-guy.html.

"If filing and quickly settling lawsuits is how you earn money for yourself and your clients, and if the expense of litigation can lead a defendant to settle a claim regardless of its merit, then you are incentivized to file as many lawsuits as possible." *Id.* As a copyright troll, Liebowitz "plays a numbers game in which [he] targets hundreds or thousands of defendants seeking quick settlements priced just low enough that it is less expensive for the defendant to pay the troll rather than defend the claim." *McDermott*, 2018 U.S. Dist. LEXIS 28664, *8 n.4 (S.D.N.Y. Feb. 22, 2018).

The volume of litigation Liebowitz generates in his settlement mill is in inverse proportion to his quality control. "In his relatively short career litigating in this District, Richard Liebowitz has earned the dubious distinction of being a regular target of sanctions-related motions and orders. Indeed, it is no exaggeration to say that there is a

growing body of law in this District devoted to the question of whether and when to impose sanctions on Mr. Liebowitz alone." *Rice v. Universal Media LLC*, No. 19-cv-447 (JMF), 2019 U.S. Dist. LEXIS 114690, *1 (S.D.N.Y. July 10, 2019). Several judges in his home court have found "particularly concerning Mr. Liebowitz's repeated failures to follow the orders and rules of this Court and others within the district, as well as his propensity to take unreasonable positions and to omit crucial facts—or even to make outright misrepresentations—in an apparent attempt to increase costs and to extort unwarranted settlements." *Pereira v. 3072541 Can., Inc.*, No. 17-cv-6945 (RA), 2018 U.S. Dist. LEXIS 195406, *7-8 (S.D.N.Y. Nov. 15, 2018) (collecting cases).

Several cases Liebowitz filed in New York have been transferred out for improper venue under 28 U.S.C. § 1400(a), both before and after he wrongly situated this case here. See, e.g., Order, *Pena v. Celebrities Unlimited, Inc.*, No. 17-cv-1853 (S.D.N.Y. Feb. 27, 2018); Order, *Polaris Images Corp. v. The Wrap News, Inc.*, No. 18-cv-6218 (S.D.N.Y. Aug. 15, 2018); Order, *Dvir v. Liftable Media Inc.*, No. 19-cv-88 (S.D.N.Y. Feb. 28, 2019); Order, *Stokes v. BYT Media Inc.*, 19-cv-4182 (S.D.N.Y. June 6, 2019). And with the New York courts' growing propensity to sanction him, and "to regularly require plaintiffs represented by Mr. Liebowitz to file bonds before proceeding further with his lawsuits," *Stridiron v. Cmty. Broadcasters, LLC*, No. 5:19-cv-108 (MAD/ATB), 2019 U.S. Dist. LEXIS 103805, *11 (N.D.N.Y. June 21, 2019), he expanded his reach, initiating cases in other states *en masse* for the first time last year.

Outside New York, Liebowitz has preferred to base his settlement mill tactics in judicial districts whose local rules will take the smallest bite from his profit margins. As a "nonresident attorney," Liebowitz must designate local counsel for service in any case he

brings in the Northern District of Illinois. N.D. Ill. Local Rule 83.15(a). This Court spares him that expense. S.D. Ill. Local Rule 83.1(d). The Northern District of Illinois may "order the filing of a bond as security for costs," including costs and fees recoverable by another party. N.D. Ill. Local Rule 65.3. This Court's local rules make no such provision. Gaming those rules, and to make litigation defense even more nettlesome, Liebowitz elected to file this copyright action and six others against Chicago-based online publishers in this district rather than the proper forum. See Doc. 26 p. 13. Yet he has filed nine others in the Northern District of Illinois over the last month, demonstrating that every moment spent litigating this action in this Court has been unnecessary.[4]

Liebowitz's penny-pinching version of forum-shopping to circumvent the costs of filing in the proper venue warrants sanctions. He may not unilaterally thrust upon Consequence the costs of his unfounded personal jurisdiction and venue claims. Consequence seeks to be made whole, and to deter further vexatious tactics by Liebowitz, by requiring him to bear the excess costs he imposed. "Sanctions under § 1927 are meant to compensate the party that has been injured by a lawyer's bad-faith conduct and to compel the lawyer to bear the costs of his own lack of care." *Tillman v. New Line Cinema*, 374 Fed. App'x 664, 666-67 (7th Cir. 2010).

> It would warp the system if a lawyer for a would-be claimant could simply file a complaint and require the adversary to do both the basic research to identify the claim and then the further work needed to craft a response.

---

[4] *Sands v. Christianity Today Int'l*, No. 19-cv-5739 (N.D. Ill. Aug. 9, 2019); *Craig*, No. 19-cv-5596 (N.D. Ill. Aug. 19, 2019); *Price v. Ear Hustle 411 LLC*, No. 19-cv-5597 (N.D. Ill. Aug. 20, 2019); *Chevrestt v. Paddock Publ'ns, Inc.*, No. 19-cv-5598 (N.D. Ill. Aug. 20, 2019); *Tabak v. The Rock River Times*, No. 19-cv-50206 (N. D. Ill. Aug. 26, 2019); *Harbus v. BG Voice Inc.*, No. 19-cv-5738 (N.D. Ill. Aug. 26, 2019); *Southall v. Crawford Constr. Corp.*, No. 19-cv-5800 (N. D. Ill. Aug. 28, 2019); *Chin v. FDRLST Media LLC*, No. 19-cv-5837 (N. D. Ill. Aug. 29, 2019); *Verch v. Global Resources Direct LLC*, No. 19-cv-5838 (N. D. Ill. Aug. 29, 2019).

> Suits are easy to file and hard to defend. Litigation gives lawyers opportunities to impose on their adversaries costs much greater than they impose on their own clients. The greater the disparity, the more litigation becomes a predatory instrument rather than a method of resolving honest disputes. … The best way to control unjustified tactics in litigation is to ensure that those who create costs also bear them. … Lawyers who litigate carelessly now must take the consequences.

*In re TCI Ltd.*, 769 F.2d 441, 446 (7th Cir. 1985). "Litigation must be grounded in an objectively reasonable view of the facts and the law. If it is not, the lawyer who proceeds recklessly — not his innocent adversaries — must foot the bill." *Id.* at 450.

The full amount of attorney's fees incurred by the defendant constitutes excess costs, recoverable under Section 1927, where a plaintiff brings claims without a factual basis and without a reasonable inquiry. *Id.* at 448 (affirming award of "fees incurred right from the beginning"); accord *Claiborne v. Wisdom*, 414 F.3d 715, 721-22 (7th Cir. 2005). Fees may also be awarded for unfounded venue allegations under the Court's "inherent power to impose sanctions for abuse of the judicial system." *Methode Elecs., Inc. v. Adam Techs., Inc.*, 371 F.3d 923, 927 (7th Cir. 2004) (citing *Chambers*, 501 U.S. at 49).

Consequence seeks to recover all of the costs and attorney's fees that Liebowitz unreasonably forced it to bear. It seeks to recover $21,037.50 in attorney's fees for 49.5 hours of undersigned counsel's services to date, at $425 per hour. Booth Decl. ¶ 7 & Ex. B. Full compensation in that amount would comport with the lodestar method commonly employed in Section 1927 cases in this Circuit, because it represents a reasonable rate for time that counsel reasonably expended. See *Estate of Perry v. Wenzel*, No. 12-C-664, 2016 U.S. Dist. LEXIS 88814, *3-4 (E.D. Wisc. July 7, 2016). $425 per hour is counsel's current standard rate, which it actually charged Consequence. Booth Decl. ¶ 8. "The best evidence of an attorney's market rate … is his or her actual billing rate for similar work." *Johnson v. GDF, Inc.*, 668 F.3d 927, 933 (7th Cir. 2012). That is only slightly higher than

the $409 per hour rate at which the Court compensated the same counsel's services under Section 1927 six years ago. *Lightspeed Media Corp. v. Smith*, No. 3:12-cv-889-GPM, 2013 U.S. Dist. LEXIS 168615, *18-19 (S.D. Ill. Nov. 27, 2013), *aff'd*, 761 F.3d 699 (7th Cir. 2014). In that case the Court commented, "That's what you call bargain rates around here." *Id.*, ECF No. 101 at 17:12-13 (Nov. 13, 2013 hearing transcript); Booth Decl. ¶ 9.

Both the hourly rate and the hours expended are wholly reasonable in light of the work performed and the outcome obtained. Mounting an active defense necessarily entailed extensive research, analysis, and legal argument. Brought into a case on the verge of a default judgment, counsel acted promptly to undo the surprise default. Doc. 29 p. 3. Then, in this motion, counsel has laid plain the baselessness of the entire proceeding and connected the dots to Liebowitz's vexatious litigation practices.

Consequence also requests $234.96 in costs necessarily expended to defend this frivolous lawsuit. Booth Decl. ¶ 10. All of its costs and attorney's fees were reasonably incurred and should be awarded, under Section 1927 or the Court's inherent authority. Liebowitz must bear the expenses he necessitated.

## Conclusion

Consequence respectfully requests that the Court dismiss this action pursuant to Fed. R. Civ. P. 12(b)(2) and (3) and 28 U.S.C. § 1406(a). In addition, Consequence also respectfully requests that the Court order plaintiff's counsel Richard Liebowitz to personally satisfy the excess costs and attorney's fees Consequence has reasonably incurred in this action pursuant to 28 U.S.C. § 1927 and the Court's inherent authority.

Respectfully,

<u>/ s /  Dan Booth</u>
Dan Booth
Dan Booth Law LLC
60 Thoreau Street #121
Concord, MA 01742
dan@danboothlaw.com

*Counsel for Defendant*
*Consequence Holdings, LLC*